### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CECILIA SOGBUYI-WHITNEY and ALIZA WHITESIDE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CAREMARK PHC LLC, CVS HEALTH SOLUTIONS LLC, and CORAM ALTERNATE SITE SERVICES INC., <br><br> Defendants. | Civil Action No. <br><br><br><br><br><br> **CLASS ACTION COMPLAINT** |

### CLASS ACTION COMPLAINT

1.  Plaintiffs Cecilia Sogbuyi-Whitney ("Sogbuyi-Whitney") and Aliza Whiteside ("Whiteside"), on behalf of themselves and all others similarly situated (collectively "Plaintiffs") through their undersigned counsel, file this Class Action Complaint against Defendants Caremark PHC LLC, CVS Health Solutions LLC, and CORAM Alternate Site Services Inc. dba CORAM CVS Specialty Infusion Services (collectively "CVS" or "Defendants"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

### PRELIMINARY STATEMENT

2.  This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* seeking payment for lost wages. Plaintiffs, on behalf of themselves and others similarly situated, also seek damages for emotional distress, punitive damages, and attorneys' fees and costs.

3.  Plaintiffs allege that Defendants discriminated against them and similarly situated

1

quality assurance consultants, performing work on Defendant's Epic medical recordkeeping system, who worked for CVS through a staffing company, from July 2019 to the present, on the basis of their race, color, national origin, and gender in violation of Title VII by excluding individuals who were not of Indian national origin or did not speak Hindi from meetings and work opportunities, and laying off primarily Black (and frequently female) workers while overwhelmingly retaining workers of Indian national origin.

## JURISDICTION AND VENUE

4.  This Court has general federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case arises under federal law, namely Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, *et seq*.

5.  The District of Rhode Island is a proper venue for this action pursuant to 28 U.S.C. § 1391 because each of the Defendants' principal place of business is located within this judicial district, and therefore a substantial part of the events giving rise to Plaintiff's claims took place in this district.

## PARTIES

6.  Plaintiff Cecilia Sogbuyi-Whitney is an individual residing in Katy, Texas.

7.  Sogbuyi-Whitney worked remotely for Defendants as an Epic Quality Assurance consultant, between November 2021 and May 2022.

8.  Plaintiff Aliza Whiteside is an individual residing in Simpsonville, South Carolina.

9.  Whiteside worked for Defendants as an Epic Quality Assurance consultant between October 2021 and May 2022.

10. Defendant CVS Health Solutions LLC is a Delaware limited liability company with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. It can be

served through its registered agent for process, CT Corporation System, 155 Federal Street Suite 700, Boston, MA 02110.

11.     Defendant Caremark PHC, LLC is a Delaware limited liability company with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. It can be served through its registered agent for process, CT Corporation System, 155 Federal Street Suite 700, Boston, MA 02110.

12.     Defendant CORAM Alternate Site Services Inc. dba CORAM CVS Specialty Infusion Services, is a Delaware corporation with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. It can be served through its registered agent for process, CT Corporation System, 155 Federal Street Suite 700, Boston, MA 02110.

**FACTS**

13.     On or about November 1, 2021, Plaintiffs began working for Gardner Resources Consulting ("Gardner") as Epic Quality Assurance Consultants ("QA consultants") for the CVS Defendants. Gardner is a staffing agency for Information Technology and Life Sciences companies in need of workers.

14.     Plaintiffs signed a contract with Gardner and were classified as employees of Gardner; however, as described further herein, they performed work exclusively for the CVS Defendants, were interviewed by representatives of CVS, and their work was directed by CVS employees.

15.     Gardner provided QA consultants, including Plaintiffs, to CVS to assist with testing of its Epic electronic medical recordkeeping (EMR) systems. Epic is an electronic medical recordkeeping system used by many hospitals and healthcare organizations.

16. Plaintiff Sogbuyi-Whitney holds an Associate's Degree in Journalism, Bachelor's Degree in Communication Studies, and a Master's Degree in Communication Studies. Before working for Gardner and CVS, Sogbuyi-Whitney trained hospital employees in various Epic modules such as Ambulatory, Clinical Documentation, Front Desk, and Anesthesia modules.

17. Plaintiff Whiteside holds an Associate's Degree in English and General Art. Before working for Gardner and CVS, Whiteside trained hospital and physician office staff on how to use Epic's billing application, spending several months at a time at a hospital or physician's office providing training to front office staff, physician billing staff, and hospital billing staff about how to use Epic.

18. Plaintiffs interviewed for the QA consultant job with Joe Maruggi from Gardner. Whiteside also interviewed for the job with Revathi Murthy from CVS. Sogbuyi-Whitney was supposed to interview with Murthy, but Murthy was not able to attend the interview. Nevertheless, Murthy approved the decision to hire Sogbuyi-Whitney.

19. Plaintiffs were paid by Gardner, but their work was directed by CVS employees who dictated what tasks they were assigned and how many hours they could bill per week. Plaintiffs were issued CVS email addresses and had to enter their hours and the results of their work on CVS's internal systems. Plaintiffs' hours had to be approved by both CVS and Gardner.

20. Upon starting the job, Plaintiffs were placed on a team of Epic QA consultants. CVS had five teams of as many as ten QA consultants, all of whom performed the same primary job duties.

21. Sogbuyi-Whitney was initially placed on a team led by Karthika Sakthivel. She was later moved to a team led by Krishna Prasad Kadimpathi. Both teams reported to CVS employees Murthy and Joni Manohar. Manohar was and is based out of Rhode Island.

22. Whiteside was also placed on the team led by Sakthivel, and thus also reported up to CVS employees Murthy and Manohar.

23. The other three teams were led by Sanjiv Giri, Nitin Shinde, and Radhika Penugondla. Those teams also reported to CVS employees Murthy and Manohar.

24. Sakthivel, Kadimpathi, Giri, Shinde, and Penugondla were selected to be "team leads" by Murthy and Manohar.

25. CVS employee Murthy as well as team leads Sakthivel, Kadimpathi, Giri, Shinde, and Penugondla are of Indian national origin or are otherwise of South Asian ethnicity.

26. Sogbuyi-Whitney and Whiteside are both black women.

27. Of the remaining QA Consultants who worked on the five teams described herein, approximately half were of Indian national origin and/or South Asian descent. The other half were either Black or White.

28. In addition to performing their day-to-day tasks of running scenarios in CVS's Epic electronic medical recordkeeping system, Plaintiffs Sogbuyi-Whitney and Whiteside were frequently asked to train new QA consultant hires and transfer knowledge to other team members, all of whom were of Indian national origin or otherwise of South Asian descent and had less knowledge of and experience working with Epic EMR systems. Despite taking on this additional work, Plaintiffs were required to meet the same production targets as other team members who did not have training and knowledge transfer responsibilities.

29. Over the course of Plaintiffs' time working for CVS, Plaintiffs' team leaders routinely convened work meetings with team members of Indian national origin and/or South Asian descent. Plaintiffs and other non-Indian/South Asian team members were excluded from

5

these meetings and only later learned about their existence from their invited South Asian colleagues, or because they were referenced in subsequent, all-hands meetings.

30. During these meetings, team leaders frequently communicated work directions, decisions, and opportunities to the South Asian team members, from which Plaintiffs and other non-Indian/South Asian team members were excluded.

31. Plaintiffs were informed in May 2022 that they would be laid off from CVS as their services were no longer needed. When they were first hired for the position by Gardner, they were told that the job would last for many years, and that the term of their contracts was for a minimum of twelve months. However, Plaintiffs were laid off after only six months.

32. At least twelve (12) other QA consultants in addition to Sogbuyi-Whitney and Whiteside were laid off between late May and early June 2022.

33. The majority of the fourteen (14) QA consultants who were laid off were Black, and none were of Indian national origin or South Asian descent.

34. Furthermore, roughly ten (10) of the fourteen (14) QA consultants who were laid off were women.

35. Like Plaintiffs, many of those who were terminated had many years of experience working with Epic EMR systems and excelled at their jobs at CVS. Conversely, all of the Indian/South Asian new hires whom Plaintiffs trained were retained by CVS.

36. The team leads, including Sakthivel and Kadimpathi, were directed by Manohar to personally select which individuals would be included in the layoffs. The team leads subsequently communicated their recommendations to Manohar and Murthy who approved them.

## **TITLE VII CLASS ALLEGATIONS**

37. Plaintiffs bring this lawsuit as a class action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, on behalf of similarly situated QA Consultants who worked for CVS from July 2019 to the present and whom CVS has terminated or otherwise discriminated against on account of their race, color, national origin, and/or gender.

38. This class meets the prerequisites of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(2) and 23(b)(3) specifically, in that:

   a. The class is so numerous that joining all members is impracticable. The exact number of the members of the class is unknown, but at least 36 individuals worked as QA Consultants for CVS from July 2019 to the present. As a result, joinder of all these individuals is impracticable.

   b. There are questions of fact and law common to all of these potential class members, because all of these individuals have been terminated or otherwise discriminated against on account of their race, color, national origin, and/or gender.

   c. The claims of the named plaintiffs are typical of the claims of similarly situated QA Consultants who worked for CVS through Gardner from July 2019 to the present and whom CVS has terminated or otherwise discriminated against on account of their race, color, national origin, and/or gender.

   d. Plaintiffs and their counsel will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse or in conflict with the class members whom they propose to represent. Plaintiffs' counsel is well qualified to litigate this case, as they have been recognized as leading counsel

        nationally for representing rights of employees in class actions and other employment litigation across the nation.

e. The questions of law and fact common to all members of the class predominate over any questions affecting only individual members. The common questions include, whether CVS's termination of Plaintiffs' and similarly situated individuals' employment was racially discriminatory.

f. Litigating these claims as a class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in highly inefficient duplication of discovery, legal briefing, court proceedings, and the risk of inconsistent legal rulings.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

39. Plaintiff Cecilia Sogbuyi-Whitney timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") prior to filing this complaint. The EEOC issued a Dismissal and Notice of Rights on or about November 10, 2022. This lawsuit was filed within 90 days of receipt of the Dismissal and Notice of Rights letter.

40. Plaintiff Aliza Whiteside timely filed her Charge of Discrimination with the EEOC prior to filing this complaint. The EEOC issued a Dismissal and Notice of Rights on or about January 23, 2023. This lawsuit was filed within 90 days of receipt of the Dismissal and Notice of Rights letter.

## COUNT I
### Title VII of the Civil Rights Act of 1964
### Race, Color, National Origin, and Gender Discrimination
### (On Behalf of Plaintiff and all others )

41.    All previous paragraphs are incorporated as though fully set forth herein.

42.    By the aforesaid actions, Defendants have violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

## JURY TRIAL

43.    Plaintiffs demand a trial by jury for all issues of fact.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and the Class:

a. Find and declare that the employment practices complained of in this Complaint constitute discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.;

b. Certify this case as a class action pursuant to Fed R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) and appoint Plaintiffs as class representatives and their counsel as class counsel;

c. Award compensatory damages, including back pay, for class members who have been terminated or otherwise discriminated against on account of their race, color, national origin, and/or gender;

d. Award any other damages that may be appropriate, including for emotional distress, punitive damages, and nominal damages, for class members who have been terminated or otherwise discriminated against on account of their race, color, national origin, and/or gender;

  e. Award all costs and attorneys' fees incurred prosecuting this action;

  f. Award interest;

  g. Award any other relief as this Court deems just and proper.

Dated: February 6, 2022      Respectfully submitted,

CECILIA SOGBUYI-WHITNEY and ALIZA WHITESIDE
individually and on behalf of others similarly situated,

/s/ Peter N. Wasylyk
Peter N. Wasylyk Esq., (RI Bar #3351)
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, Rhode Island 02908
Tel: 401-831-7730
Email: pnwlaw@aol.com

Harold Lichten, pro hac vice anticipated
Adelaide H. Pagano, pro hac vice anticipated
Matthew P. Carrieri, pro hac vice anticipated
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston St., Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile: (617) 994-5801
hlichten@llrlaw.com
apagano@llrlaw.com
mcarrieri@llrlaw.com

*Attorneys for Plaintiffs
and the Proposed Class*